J. EARL MORGAN, EXECUTOR OF THE ESTATE OF ELIZABETH S. MORGAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82771. Promulgated September 30, 1937.

*A. M. Kracke, Esq.,* for the petitioner.

*H. F. Noneman, Esq.,* and *Frank T. Horner, Esq.,* for the respondent.

OPINION.

ARUNDELL: Petitioner seeks the redetermination of a $43,977.93 deficiency in estate tax. All the issues, except one, have been agreed upon by stipulation and effect will be given thereto under Rule 50. The issue remaining is whether two certain powers of appointment were "general" as determined by respondent, or "special" as contended for by petitioner. The parties filed a stipulation of facts which we incorporate herein by reference and briefly summarize only those facts which are material to a clear understanding of the issue we are to decide.

The decedent, Elizabeth S. Morgan, died testate May 3, 1933, a citizen of the United States and a resident of the State of Wisconsin, and petitioner is the duly appointed executor of her last will and testament. Isaac Stephenson, decedent's father, died testate on March 15, 1918. He was also a citizen of the United States and a resident of the State of Wisconsin. By his last will and testament and several codicils thereto, he conveyed certain property in trust for the benefit of his children. The children were to receive the income annually and a certain portion of the principal at the end of four, eight, and twelve years after his death, and the entire remaining principal at the end of sixteen years after his death, provided they were living at the end of each of the four stated periods. The trust estate was divided into nine parts, part numbered five being conveyed in trust for decedent's benefit as follows:

ITEM FIFTEEN: I direct said trustees to pay to my daughter Elizabeth S. Morgan annually the net annual income from part numbered five (5) into which my trustees shall have divided my estate * * *.

I give, devise and bequeath to the appointee or appointees of my daughter Elizabeth S. Morgan by her last will and testament all property of any nature and kind in the hands of my said trustees at the time of her death constituting said part five (5) * * *.

The trust further provided that, should decedent die without exercising the power, then whatever portion of the principal remained should go to her issue, and, in the event of her death without issue, then such remaining portion of the principal should be equally divided and distributed among the other remaining parts into which the estate was divided.

On May 12, 1917, Isaac Stephenson executed a deed of trust reading in part as follows:

7. After my death and during the continuance of the trust hereby created, said Trustees shall pay annually to my daughter ELIZABETH S. MORGAN the net annual income from said part numbered five (5).

If my daughter Elizabeth S. Morgan shall be living at the time of the termination of this trust, said Trustees shall transfer to her all property then in their possession constituting said part five (5).

If my daugher Elizabeth S. Morgan shall die prior to the termination of said trust, then said Trustees shall pay annually the net annual income from said part five (5) to such person or persons as she may appoint by her last will and testament duly admitted to probate, and at the termination of this trust said Trustees shall transfer the property then in their possession constituting said part five (5) to such person or persons as she may appoint in the manner aforesaid.

If my daughter Elizabeth S. Morgan, dying as aforesaid, should fail to make such appointment * * * then and in any such event the annual income from said part five (5), * * * shall be paid annually by said Trustees to her issue surviving * * * and at the termination of said trust, said Trustees shall transfer all the property then in their possession, constituting said part five (5), * * * to the then surviving issue of my said daughter * * *.

During her life decedent received the distributions payable to her at the end of the fourth, eighth, and twelfth years after the death of her father, as provided for in his will, but she did not receive the distribution payable to her at the end of the sixteenth year, owing to the fact that she only lived fifteen years, one month, and eighteen days after her father's death.

By her last will and testament decedent exercised the power of appointment under her father's will as to that portion of the property which she would have received at the end of the sixteen years after her father's death, had she lived, and she also exercised the power of appointment given her by her father's deed of trust, the appointments being in the following words:

TWENTY-SECOND: Under the last will and testament of my father * * * I do hereby nominate, constitute, authorize and appoint my husband, J. Earl Morgan * * *.

TWENTY-THIRD: Under the Deed of Trust dated May 12, 1917, * * * I do hereby appoint my husband, J. Earl Morgan * * *.

The respondent determined that both powers which decedent exercised by will were "general" powers of appointment; that the value of the property passing under such powers was $41,212.82 and $325,613.51, respectively; and that these values should be included in decedent's gross estate under section 302 (f) of the Revenue Act of 1926, as amended by section 803 (b) of the Revenue Act of 1932.

Petitioner contends that the two powers in question were "special" powers, rather than "general" powers, as was determined by the

respondent. Petitioner does not question the respondent's determination of the value of the property passing under the powers.

Section 302 (f) of the Revenue Act of 1926, as amended by section 803 (b) of the Revenue Act of 1932, provides in part as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *

* * * * * * *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will * * *.

It has been held that in determining the nature and effect of powers we look to the law of the state having jurisdiction, *Leser* v. *Burnet*, 46 Fed. (2d) 756; *Christine Smith Kendrick et al., Executrices*, 34 B. T. A. 1040, 1044. In this case the powers were created while the donor was a resident of Wisconsin; the donee was a resident of that state; the property affected is in that state, and the estate of the deceased donee is being administered in the courts of that state.

The statutes of Wisconsin in force when the powers herein were created and when they were exercised define general and special powers as follows:

232.05 General power. A power is general when it authorizes the alienation in fee, by means of a conveyance, will or charge of the lands embraced in the power, to any alienee whatever.

232.06 Special power. A power is special: (1) When the person or class of persons to whom the disposition of the lands under the power to be made are designated. (2) When the power authorizes the alienation by means of a conveyance, will, or charge of a particular estate or interest less than a fee.

These provisions are held by the Wisconsin Supreme Court to apply to both real and personal property. *Will of Zweifel*, 194 Wis. 428; 216 N. W. 840; *Cawker* v. *Dreutzer*, 197 Wis. 98; 221 N. W. 401, 413.

The two powers here appear to us to come squarely within the above definition of general powers. Each of them "authorizes the alienation in fee, by means of a * * * will * * * to any alienee whatever." They do not contain the specified elements that mark special powers. They do not designate the person or class that may be appointed (232.06 (1)); they do not limit the estate that may be alienated to a particular estate or an interest less than a fee (232.06 (2)). Consequently, it is our opinion that these powers, fitting exactly as they do in the statutory definition of general powers, must be held to be general powers under the law of Wisconsin.

In *Cawker* v. *Dreutzer*, *supra*, the Supreme Court of Wisconsin states that the Wisconsin statute on powers, being "derived by adoption from New York, should have the same interpretation here as

·there \* \* \*." The statutes of the two states are almost identical. See sec. 134, Real Property Law, McKinney's Consolidated Laws of New York. The courts of New York have construed powers such as are under consideration in this case to be general powers. In the case of *In re Lather's Will*, 137 Misc. Rep. 222; 243 N. Y. S. 380, there was a testamentary trust to pay the income to the testator's son for life and then to distribute the corpus to the son's appointees designated by will. The power to appoint was exercised and the court held that "it was a general power exercised by will." On similar facts in *Farmers' Loan & Trust Co.* v. *Shaw*, 56 Misc. Rep. 201; 107 N. Y. S. 337, it was held that the power was ":a general power of appointment without limitation." An early New York case, *Dana* v. *Murray*, 122 N. Y. 604; 26 N. E. 21, uses almost literally the language of the Wisconsin statute in defining a general power. The definition is, "It is general where it authorizes the alienation in fee by means of a conveyance, will, or charge of the lands embraced in the power to any alienee whatever." These holdings of the New York courts applying their similar statute afford substantial support for our view that the powers in this case are general powers.

The case of *Cawker* v. *Dreutzer*, *supra*, is said by petitioner to be authority for holding these powers to be special powers. In that case there was a testamentary trust to pay the income to plaintiff's mother for life, then to the plaintiff for life with a power of appointment as to the corpus, to be exercised by will. In a suit brought by the donee of the power the two main questions presented were, first, whether the power of appointment was valid, and, second, if the power was valid, whether it gave the donee complete and absolute title in the property. Under the second point the theory of the plaintiff was that there was a merger of her life estate and of her power of appointment. On the first point the court held the power to be valid. In discussing the second point the court said in part:

Neither is the power a general power, as defined in section 232.05, but is a special power under subdivision (2), §232.06, because it embraces an interest less than a fee.

The petitioner points to the quoted language in support of the contention that the powers in this case are special powers. We do not so read the opinion of the court. The chief concern of the court was to determine whether the power was one that the Wisconsin statute describes as "an absolute power of disposition." Sec. 232.08. The court held that it was not such a power and consequently there was no merger of estates. As we read the opinion, the court did not have squarely presented to it the question of whether the power was general or special, and its statement as above quoted is dictum. The *Cawker* case appears to be the only one reported to date that at

all purports to touch upon the question here involved. In view of the fact that the precise question we have was not before the Wisconsin court in the *Cawker* case, we think the quoted words should not be taken as decisive, especially as they appear to be out of harmony with the decisions of the New York courts construing their similar statute. Considering the powers in this case in the light of the language of the Wisconsin statute and the decisions of the New York courts above cited, we hold, as set out above, that the powers were general and that the property passing thereunder is includable in gross estate.

*Decision will be entered under Rule 50.*